### CRUMLEY *v.* GIBBS, sheriff.

Where a person who was indicted for the crime of murder was convicted of voluntary manslaughter, he was not entitled as a matter of right, pending his motion for a new trial, to demand that he should be admitted to bail; but whether bail should be allowed him or not was a matter within the sound discretion of the presiding judge.

No. 1140. MAY 14, 1919.

Habeas corpus. Before Judge Crum. Wilcox superior court. August 19, 1918.

*H. A. Hodges* and *Hal Lawson,* for plaintiff.

*J. B. Wall, solicitor-general, M. B. Cannon,* and *Max E. Land,* for defendant.

ATKINSON, J. Noah Crumley, who was indicted for the murder of John Fitzgerald, was convicted of voluntary manslaughter. Pending a motion for new trial and after supersedeas granted, he applied to the judge to be discharged on bail. His application was refused. Thereafter he brought habeas corpus, offering to give any reasonable bail that might be required, and prayed for his discharge. The judge upon the facts stated remanded the prisoner, and he excepted.

In *Vanderford* v. *State,* 126 *Ga.* 67 (54 S. E. 822, 9 Ann. Cas. 617), after referring to several decisions of this court, especially *Corbett* v. *State,* 24 *Ga.* 391, and to the constitution and several statutes of this State, and the common law and the laws of other States on the subject of the right of the person convicted of crime to give bail, it was held: "Where a person who was indicted for the crime of rape was found guilty with a recommendation to mercy, and was sentenced to the penitentiary for twenty years, and thereupon, after refusal of a new trial, filed a bill of exceptions bringing the case to this court, he was not entitled as a matter of right to demand that he should be admitted to bail; but whether bail should be allowed him or not was a matter within the sound discretion of the presiding judge." Since that decision was rendered and while all of the statutes of this State therein referred to were of force, the legislature passed the act of 1916 (Acts 1916, p. 157) as follows:

"An act to provide for the assessment, giving, and approval of supersedeas bonds in this State, in criminal cases which are bailable, immediately upon the filing and approval of a motion for new trial in any such case, and for other purposes.

"Section 1. Be it enacted by the General Assembly of Georgia, and it is hereby enacted by authority of the same, that from and after the passage of this act, it shall be the right of any person convicted of a crime in this State, which is bailable under the law, and in which case a motion for new trial shall have been filed as provided by law, to give a supersedeas bond immediately upon the filing of such motion for new trial, without having to wait for the signing or filing of a bill of exceptions in such case.

"Sec. 2. Be it further enacted by the authority aforesaid, that

the judge of the court having jurisdiction of such case shall, immediately upon the approval and filing of a motion for new trial therein, assess the amount of the bond referred to in the preceding section, which shall be approved in the same manner as supersedeas bonds in criminal cases are now approved in this State."

Sec. 3 is the repealing clause.

It is contended that in view of the provisions of this act it was mandatory upon the judge to grant the applicant the privilege of making bail, and that it was not a matter within the discretion of the court. Before the passage of this act, the only statute expressly providing for bail of a person convicted of crime was that embodied in the Penal Code, § 1104, wherein it was provided that the bill of exceptions duly filed "shall operate as a supersedeas" where the offense is bailable, and the "defendant shall enter into a recognizance before the clerk, with security to be approved by him, in a sum to be fixed by the presiding judge, conditioned for the personal appearance of such defendant to abide the final order, judgment, or sentence of said court." That is the law to which reference is had in section 2 of the act of 1916, supra, where it describes how bonds contemplated by that act should be approved. Prior to the passage of the act of 1916, it was thought by some that the judge was without authority to grant bail after conviction of the accused until he should file a bill of exceptions as provided in the Penal Code, § 1104; and it was the practice in some of the circuits in this State not to allow him to do so. Under this practice it would be a hardship upon a convicted defendant, whom the judge in the exercise of his sound discretion would be authorized to admit to bail, to be incarcerated pending the disposition of the motion for new trial. Properly construed, the law of 1916, supra, was enacted to avoid such a condition, and was not intended to take away the discretion of the trial judge in the matter of granting bail. In reading the caption and each of the sections in the body of the act separately and in their entirety, the most prominent feature of the legislation is to provide a time at which "supersedeas bonds" (bonds for the appearance of the accused to answer the judgment of the court) should be assessed and allowed, designating the time as upon the filing and approval of the motion for new trial. The statute employs the word "bailable," which was similarly employed in the older statute. Penal Code, § 1104. But

as that word was construed in *Vanderford* v. *State,* supra, so should it be construed in the act of 1916 as referring to a case that was bailable in the sound discretion of the trial judge. If it were not so construed and applied, persons convicted would probably be released on bail and avoid the penalty of the law in cases never contemplated by the legislature. Under this construction of the law, it was within the sound discretion of the trial judge to refuse bail, and there was no error in remanding the prisoner.

<i>Judgment affirmed. All the Justices concur.</i>